**VALLI KANE & VAGNINI, LLP**
*Attorneys for Plaintiffs*
**600 OLD COUNTRY ROAD**
**GARDEN CITY, NY 11530**
**(516) 203-7180**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   JUL 11 2011   ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

Lauren D'Annunzio, Ashley D'Annunzio,
and Gabrielle D'Annunzio,

             Plaintiff,

    v.

Ayken, Inc. d/b/a Ayhan's Fish Kebab
Restaurant, Ayhan Hassan and Dario Gomez,

             Defendants.
------------------------------------------------------------X

**SUMMONS ISSUED**

**COMPLAINT**
**CV-11 3303**
**JURY TRIAL DEMANDED**

FUERSTEIN, S
WALL, M.J.

      Plaintiffs, Lauren, Ashley and Gabrielle D'Annunzio, ("Plaintiffs" or "D'Annunzio sisters") by and through their attorneys at Valli Kane & Vagnini, LLP, bring this action for damages and other legal and equitable relief from the Defendants Ayken, Inc. d/b/a Ayhan's Fish Kebab Restaurant, Ayhan Hassan, and Dario Gomez ("Defendants") for violation of the laws prohibiting sexual harassment, hostile work environment, and negligent infliction of emotional distress, stating the following as Plaintiffs' claims against Defendants.

### JURISDICTION AND VENUE

     1.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act

of Congress providing for the protection of civil rights; and (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201. The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

2. Venue is proper in this Court in as much as this judicial district lies in a State in which the unlawful employment practices occurred. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendants maintain offices, conduct business and reside in this district.

## PARTIES

3. Plaintiff ("Plaintiff" or "Lauren") Lauren D'Annunzio is a former employee of Defendant Ayken, Inc. d/b/a Ayhan's Fish Kebab Restaurant and resides in Port Washington, New York.

4. Plaintiff ("Plaintiff" or "Ashley") Ashley D'Annunzio is a former employee of Defendant Ayken, Inc. d/b/a Ayhan's Fish Kebab Restaurant and resides in Port Washington, New York.

5. Plaintiff ("Plaintiff" or "Gabrielle") Gabrielle D'Annunzio is a former employee of Defendant Ayken, Inc. d/b/a Ayhan's Fish Kebab Restaurant and resides in Port Washington, New York.

6. Defendant ("Defendant" or "Ayken") Ayken, Inc. d/b/a Ayhan's Fish Kebab Restaurant. ("Ayhan's Fish Kebab") is a restaurant and employer whose principle place of business is located at 286 Main Street, Port Washington, New York 11050.

7. Ayken, Inc is a New York State Corporation with its principal place of business located at 283 Main St. Port Washington, New York 11050.

8. Defendant Ayhan Hassan ("Defendant" or "Hassan") is the sole shareholder and director of Defendant Ayken, Inc. Ayken, Inc is the owner and operator of Ayhan's Fish Kebab restaurant located at 286 Main Street, Port Washington.

9. Defendant Dario Gomez ("Defendant" or "Gomez") is the full time manager at Ayhan's Fish Kebab restaurant located at 286 Main Street, Port Washington, and was the full time manager during the Plaintiffs' employment at Ayhan's Fish Kebab Restaurant.

## ADMINISTRATIVE EXHAUSTION

10. Plaintiffs filed a verified complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about January 14th, 2009.

11. Plaintiff Ashley D'Annunzio requested a Notice of Right to Sue Letter from the EEOC which was mailed on or about April 11, 2011.

12. Plaintiffs Lauren D'Annunzio and Gabrielle D'Annunzio received determinations from the EEOC on or about April 11, 2011, wherein it was found that there is reasonable cause to believe that Defendants discriminated against them on account of their sex and they were sexually harassed and constructively discharged.

13. Plaintiffs Lauren D'Annunzio and Gabrielle D'Annunzio requested their Notices of Right to Sue Letters from the EEOC which were respectively mailed on or about June 15, 2011.

## STATEMENT OF FACTS

14. Gabrielle D'Annunzio began working as a hostess for Defendant Ayken on or about June of 2005. Her employment with Defendant Ayken ended in July 2008, after her sister Lauren was sexually assaulted by a male employee.

15. Her sister, Lauren D'Annunzio began working as a hostess for Defendant Ayken on March 16, 2006. Lauren's employment with Defendant Ayken ended in July 2008, after she was sexually assaulted by a male employee.

16. Their sister Ashley D'Annunzio started working as a hostess for Defendant Ayken on August of 2007. Ashley's employment with Defendant Ayken ended in July 2008, after her sister Lauren was sexually assaulted by a male employee.

17. At various times during their employment Gabrielle and Ashley worked as bartenders for the Restaurant.

18. Each of the D'Annunzio sisters was exposed to repeated, inappropriate, offensive comments by the restaurant's male employees throughout their employment.

19. Some of the male employees who participated in the offensive behavior included but were not limited to Juan Orellana, Carlos (last name unknown) who was the chef, Jaime (last

name unknown) who was a busboy, Mario (last name unknown), Victor (last name unknown) who was a busboy, and Victor (last name unknown) a delivery person.

20.     The male employees' comments included, but were not limited to, statements harassing the D'Annunzio sisters to spend time with the male employees outside of work and also about the male employees' ability to "pleasure" them, sexually.

21.     The male employees would make sexually explicit descriptions about what they would like to do to Plaintiffs, and other female employees. Male employees made comments about their legs, buttocks and breasts of a sexually explicit nature.

22.     Other witnesses to this behavior, include but are not limited to Roxana Abarca, Rosa Sarmiento, Fabiola Quezada, Dario Gomez, Elaine (last name unknown, she was a waitress), Linda (last name unknown, she was a waitress), Sal (last name unknown, a waiter), Gzenghis Yumrutas, an occasional manager).

23.     Very often the comments were made in Spanish, of which the D'Annunzio sisters had enough of a working knowledge to understand that they were saying lewd, inappropriate things about their bodies, their clothing and of a sexual nature.

24.     When one male employee would make a sexually charged comment, the other male employees would all break out laughing.

25.     Dario Gomez, the manager of the restaurant was often present for the lewd comments and would laugh along with the other male employees.

26.     Gomez never told the male employees to stop.

27. Gomez never indicated that he was troubled or unhappy with the inappropriate comments.

28. Gomez, the top management level employee in the restaurant permitted the other male employees to believe it was alright to make rude, lewd, sexually charged comments and gestures towards the D'Annunzio sisters and the other female employees, by laughing along and never telling anyone to stop.

29. The D'Annunzio sisters never made any gesture or comment which would insinuate or otherwise suggest that this type of behavior was appropriate or wanted.

30. Both Lauren and Gabrielle also experienced unwanted touching. Specifically, they experienced male employees rub their backs and slap their buttocks.

31. Male employees would attempt to massage, rub, and touch the D'Annunzio sisters' arms, backs and buttocks on a regular basis.

32. Lauren had her bra exposed when her shirt was pulled up by male employees.

33. This sexually harassing behavior was allowed to foster by a management fully aware of what was taking place.

34. Ashley was very uncomfortable when comments were made about her looks and her body. While she was never physically touched, she did observe men massage and grab other people buttocks, including her sisters.

35. On many occasions Gomez personally observed inappropriate touching and offensive comments being made towards the female employees by the male employees.

36. Specifically, on many occasions Gomez personally observed male employees approach the D'Annunzio sisters and massage them and attempt to grab their buttocks.

37. Lauren and Gabrielle requested that Gomez make the behavior stop.

38. Ayken, Ayhan and Gomez each owed Plaintiffs a duty of care to maintain a safe workplace for Plaintiffs.

39. Furthermore, Gomez had the authority to make personnel decisions to discipline and/or remove any staff who acted inappropriately or offensively.

40. None of the Defendants did anything to prevent the touching and comments, or did anything to discipline any offending staff.

41. Gomez was also aware of the fact that the D'Annunzio sisters and those similarly situated were uncomfortable and significantly disturbed by the actions of the male staff as the women made verbal complaints to Gomez.

42. Gomez would joke with the male employees about the D'Annunzio sisters' complaints of harassment. Indeed, he intentionally encouraged such behavior by laughing along with the others after sexually inappropriate comments or gestures were made at the D'Annunzio sister's expense.

43. Because of management's inaction, Lauren was sexually assaulted after being cornered in the basement of the restaurant in July of 2008 by Juan Pablo Orellano, a cook.

44. While Lauren was carrying a bucket filled with bottles of wine, Orellano came up behind her, took the bucket out of her hands and grabbed her in a bear hug. He then groped her breasts and genitals outside of her clothing while she shouted unsuccessfully for him to stop.

45. Lauren was able to escape when Mario, a busboy came down the stairs. Had Mario not come down to the basement area, surprising Lauren's attacker it is possible that this horrific incident could have escalated into something worse.

46. Defendants' inaction to stop and prevent harassment of Plaintiffs was a breach of their duties of care to Plaintiffs.

47. Defendant's permitting its male employees to engage in unwanted, hostile behavior towards the female employees, created an atmosphere that led to Lauren's attacker believing he could take it to that next step.

48. No one had ever done anything to protect the D'Annunzio sisters from this sexually charged atmosphere.

49. Lauren was seventeen years old when she was attacked in the basement of Defendant's Fish Kebab restaurant.

50. Had Defendant's properly addressed the earlier complaints of inappropriate behavior in the workplace, perhaps Lauren's attack could have been avoided.

51. Defendants' conduct or lack thereof, endangered Plaintiff's safety and caused Plaintiffs to fear for their own physical safety.

52. The offending male employee was arrested and pled guilty to Attempted Sexual Abuse in the First Degree and was sentenced to four months incarceration at the Nassau County Correctional Center.

53. Lauren's attacker has since been deported.

54. There were no FLSA posters posted in the restaurant explaining employee rights with respect to Sexual Harassment or any other employment laws.

55. Defendants did not have a Sexual Harassment policy in place at the time of Plaintiffs' employment.

56. Defendants did not provide a handbook to its employees delineating their rights under the law.

57. Upon information and belief, the company's complete lack of respect for the law is further illustrated by the fact that they have underage minors tending bar.

58. Due to management's failure to take action to protect the female employees, the D'Annunzio sisters were constructively discharged as they was unable to return to work in the same place they and other women had been systematically harassed and where Lauren D'Annunzio was assaulted.

59. Based on the above aforementioned allegations, Plaintiffs have been the victim of sexual harassment and subjected to a hostile work environment.

## AS AND FOR PLAINTIFFS' FIRST CAUSE OF ACTION
## FOR VIOLATION OF 42. U.S.C. 2000, et seq., ("TITLE VII")
## AGAINST DEFENDANT AYKEN, INC. D/B/A AYHAN'S FISH KEBAB RESTAURANT

60. Plaintiffs were subjected to sexual harassment, a hostile work environment and constructive discharge by Defendant Ayken, Inc. d/b/a Ayhan's Fish Kebab Restaurant.

61. This is in direct violation of Title VII ("Civil Rights Act of 1964, as amended").

62. As a result of this illegal action, Plaintiffs have been physically and emotionally damaged in an amount that is not presently calculable due to the ongoing and future effects. Plaintiffs have also been damaged by having lost wages and benefits due to their constructive discharge.

## AS AND FOR PLAINTIFFS' SECOND CAUSE OF ACTION
## FOR VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW
## AGAINST DEFENDANT AYKEN, INC. D/B/A AYHAN'S FISH KEBAB RESTAURANT

63. Plaintiffs were subjected to sexual harassment, a hostile work environment and constructive discharge by Defendant Ayken, Inc. d/b/a Ayhan's Fish Kebab Restaurant.

64. This is in direct violation of the New York State Human Rights Law, Executive Law § 290 et. seq.

65. As a result of this illegal action, Plaintiffs have been physically and emotionally damaged in an amount that is not presently calculable due to the ongoing and future effects. Plaintiffs have also been damaged by having lost wages and benefits due to their constructive discharge.

## AS AND FOR PLAINTIFFS' THIRD CAUSE OF ACTION
## FOR VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW
## AGAINST DEFENDANTS AYHAN HASSAN AND DARIO GOMEZ

66. Defendants Ayhan Hassan and Dario Gomez aided and abetted Defendant Ayken, Inc. d/b/a Ayhan's Fish Kebab Restaurant's discriminatory actions subjecting Plaintiffs to sexual harassment, a hostile work environment and constructive discharge.

67. This is direct violation of the New York State Human Rights Law, Executive Law § 290 et. seq.

68. As a result of this illegal action, Plaintiffs have been physically and emotionally damaged in an amount that is not presently calculable due to the ongoing and future effects. Plaintiffs have also been damaged by having lost wages and benefits due to their constructive discharge.

## AS AND FOR PLAINTIFFS' FOURTH CAUSE OF ACTION FOR NEGLIGENT
## INFLICTION OF EMOTIONAL DISTRESS UNDER NEW YORK STATE LAW
## AGAINST ALL DEFENDANTS

69. Defendants Ayken, Inc. d/b/a Ayhan's Fish Kebab Restaurant, Ayhan Hassan and Dario Gomez subjected Plaintiffs to negligent infliction of emotional distress.

70. Defendants owed Plaintiffs a duty of care to prevent and stop any harassment against them by other Defendants' employees.

71. Defendants' refusal to take action to stop the harassment of Plaintiffs constituted extreme and outrageous conduct and a breach of their duty of care they owed to Plaintiffs.

72. Defendants' conduct endangered Plaintiffs' safety and caused Plaintiffs to fear for their own physical safety.

73. Defendants conduct caused severe emotional distress to Plaintiffs and constituted negligent infliction of emotional distress against Plaintiffs.

74. As a result, Plaintiffs have been physically and emotionally damaged in an amount that is not presently calculable due to the ongoing and future effects.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs demand judgment and trial by jury on their first, second, third, and fourth causes of action directing Defendants to compensate Plaintiffs for their economic loss, humiliation, embarrassment, physical and emotional distress, and mental anguish caused by Defendants' violations of the law alleged in this Complaint. Plaintiffs also seek an award of punitive damages where warranted that are commensurate with Defendants' ability to pay and so as to deter Defendants' future wanton, willful and malicious acts as outlined in the Complaint. Plaintiffs also seek costs and disbursements of this action, including reasonable attorney's fees, and any such other and further relief the Court may deem just and proper.

DATED:   July 8, 2011
         Garden City, New York

_____
ROBERT J. VALLI, JR. (RV-9995)
Valli Kane & Vagnini, LLP
600 Old Country Road
Suite 519
Garden City, NY 11530
516-203-7180